NIETFELDT, Respondent, v. AMERICAN MUTUAL LIABILITY INSURANCE COMPANY and another, Defendants: STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and others, Appellants.

*No. 265. Submitted under sec. (Rule) 251.54 February 5, 1975.— Decided March 4, 1975.*
(Also reported in 226 N. W. 2d 418.)

For the defendants-appellants the cause was submitted on the briefs of *Schoone, McManus, Hanson & Grady, S. C.,* attorneys, of Racine, and *Leah M. Lampone* of counsel, of Milwaukee; and for the respondent the cause was submitted on the brief of *Edward Rudolph* of Milwaukee.

HANLEY, J. The issues presented on this appeal are:
1. Was there any credible evidence to support the jury verdict?
2. Did the trial court abuse its discretion in denying the motion for a new trial on the grounds of newly discovered evidence?
3. Should a new trial be granted in the interest of justice?
4. Did the trial court abuse its discretion in finding the jury's award of damages excessive?

*Sufficiency of evidence.*
The defendants argue that the plaintiff's explanation of the manner in which he sustained his injury is incredible and in the absence of credible evidence no speculation as to the actual cause of the injury is allowed.

The plaintiff testified that he was traveling on Highway 20 at a speed of 45–50 miles per hour in the nighttime and was proceeding 2½–3 feet from the right edge of the road. When he was 500 feet from the truck he saw a westbound vehicle. Both vehicles were on dim lights. The plaintiff continued with no reduction of speed and as he was next to the oncoming car he hit the truck which he had not seen until after impact. He said he spun sideways and when he was 10 feet east of the truck he looked back and saw the truck. He estimated his speed at that time at 10 miles per hour.

The plaintiff's speed reduction from 45 to 50 miles per hour to 10 miles per hour was found incredible and contrary to physical facts by the trial court. However, the

trial court stated that such testimony was not proof that plaintiff did not make contact with the truck. Such testimony goes to his credibility.

The rules invoked by this court in reviewing jury findings are well established. The rule is that a verdict or finding of a jury will not be set aside or disturbed if there is any credible evidence which under any reasonable view fairly admits of an inference that supports the jury's finding.[1] In reviewing jury findings this court need only consider the testimony that tends to sustain the verdict.[2]

The issue is whether or not there is sufficient credible evidence that will support a finding that plaintiff did in fact strike the truck. The plaintiff testified to that fact. This fact is supported by other facts which circumstantially corroborate the fact of contact with the truck.

Plaintiff arrived at home minus his right boot. His father observed his boot in front of the truck on the roadway. A deputy also saw it later and picked it up and brought it to the hospital. The truck was parked up on blocks minus its rear wheels. Its axle protruded slightly. The plaintiff's father saw blood on the axle shortly after the accident. It is undisputed that the right foot peg was bent up and backward and that the tailpipe was caved in.

The defendants contend that this is insufficient evidence of contact between the truck and the motorcycle. We think the above evidence which the jury had a right to consider and rely on established the fact of the motorcycle striking the truck causing plaintiff's injury.

The defendants further contend that even assuming the cause of injury was sufficiently proved, there is no evidence to support the jury's apportionment, as the

[1] *Burlison v. Janssen* (1966), 30 Wis. 2d 495, 500, 141 N. W. 2d 274.

[2] *Werner Transportation Co. v. Barts* (1973), 57 Wis. 2d 714, 205 N. W. 2d 394.

plaintiff's negligence exceeded that of the defendants as a matter of law. We do not agree.

Defendants cite two cases with claimed analogous fact situations. *Kornetzke v. Calumet County* (1959), 8 Wis. 2d 363, 99 N. W. 2d 125, and *Hephner v. Wolf* (1952), 261 Wis. 191, 52 N. W. 2d 390. In *Kornetzke* the plaintiff struck a tree while traveling around a curve at a speed of between 25 and 30 miles per hour according to his testimony. However, a 90-foot braking distance indicated that the car was traveling between 40 and 45 miles per hour. The plaintiff was driving in a fog with visibility of 60 to 70 feet. The tree which the plaintiff struck was about 65 feet high and measured 44 inches in diameter four feet above the ground and was located in a boulevard. In that case, the court in deciding the case stated ". . . assuming there was negligence on the part of the defendants (which we do not decide), the negligence of the plaintiff was at least as great as that of the defendants and there can be no recovery." (P. 368.)

In *Wolf, supra,* an apportionment of 75.5 percent negligence to the defendant and 24.5 percent to the plaintiff was overturned by this court where the plaintiff had run into a truck which had stopped behind a disabled vehicle operated by the defendant and resting four feet on the highway, with his right wheels as far on the east shoulder as his car could go without getting into a ditch. In *Wolf,* the driver of the Olson truck testified he had no difficulty in seeing the Wolf car a thousand feet or more away; that he brought his truck to a standstill with all four wheels on the pavement behind the Wolf car; that the truck was well-lighted, both front and back. He testified that the reason he stopped there instead of proceeding up to the crest of the hill was that he did not wish to pass the Wolf car until an approaching car had passed. Under those facts, Hephner's negligence was clearly greater than Wolf's negligence in parking his car.

The fact situations in the above-cited cases are not analogous to the case at bar. Here, the truck was not in front of plaintiff but had been left on the shoulder with its axle jutting into the lane of travel where plaintiff's foot and foot peg would extend beyond the width of the motorcycle. In addition, the road was dark, unlighted, and lined with shrubs and trees to obscure the truck from view. Here the jury was entitled to believe that the negligence of the defendant in leaving the truck parked without warning lights or flares which they had ample time to obtain in daylight was the principal cause of this accident. The manner in which this truck was parked with only the axle protruding onto the highway was a trap to a passing motorcyclist.

We conclude that there is credible evidence to support the jury's apportionment of negligence.

*New trial on newly discovered evidence.*

Defendants contend that a new trial should be granted on the basis of newly discovered evidence.

During the course of trial, counsel for plaintiff asked his client the status of his eyesight at the time of the accident in light of some acid burns he had sustained to his right eye fourteen months previously. In reply, plaintiff stated: "I could see real well . . . I had no problem. I could see real well." When asked whether the acid burns impaired his vision, he responded: "Yes, a little. My right eye isn't—is impaired a little. But I could see out of it, but not real well."

In a conversation with a court reporter several weeks after the jury verdict, defense counsel learned for the first time that plaintiff had filed a workmen's compensation claim for injuries sustained to his right eye as a result of the acid burns. Upon receiving this information, counsel made inquiry of Wisconsin department of industry, labor & human relations and discovered that a finding of 81.13 percent loss of vision to the eye had been

made pursuant to a stipulation between plaintiff, his attorney, Mr. Rudolph, and the workmen's compensation carrier, which stipulation was filed with the ILHR department. Counsel thereupon moved for a new trial on the ground of newly discovered evidence. The trial court denied a new trial on the ground of newly discovered evidence because it thought the evidence was cumulative.

The requirements that must be met before a new trial will be granted on the ground of newly discovered evidence are well established. They are:

1. The evidence must have come to their knowledge after the trial.

2. They must not have been negligent in seeking to discover it.

3. The evidence must be material to the issue.

4. The evidence must not be merely cumulative to testimony introduced at the trial.

5. It must be reasonably probable that a different result would be reached on a new trial.

The above requirements were set forth in *Estate of Teasdale* (1953), 264 Wis. 1, 4, 58 N. W. 2d 404; *Herchelroth v. Mahar* (1967), 36 Wis. 2d 140, 153 N. W. 2d 6; *John Mohr & Sons, Inc. v. Jahnke* (1972), 55 Wis. 2d 402, 198 N. W. 2d 363.

The above requirements have not been met. The newly discovered evidence is cumulative. The trial court pointed out that at the time of trial the truly poor vision in the plaintiff's right eye was brought to the attention of the court and jury through the cross-examination of Dr. Krismer through Dr. Ferwerda's report setting forth that Dietrich Nietfeldt had vision in the right eye that was barely light perceptive. Although the plaintiff testified as to his ability to see, he did admit he could not see real well out of it. He demonstrated at trial that he could not tell whether his attorney had four or five fingers up when he tested him.

The plaintiff testified that he had an accident fourteen months prior to the foot injury when a battery at work had exploded in his face. This injury had impaired his vision. The trial lasted five days and defense counsel had sufficient time to obtain workmen's compensation records.

We conclude that the trial court did not abuse its discretion in denying the defendants' motion for a new trial on newly discovered evidence.

*New trial in the interest of justice.*

Defendants argue that a new trial should be ordered in the interest of justice under sec. 251.09, Stats. Attention is called to the undue length of the trial, the improper conduct of opposing counsel, the resulting excessive damage award and perverse negligence apportionment and the existence of newly discovered evidence as grounds for reversal.

The trial lasted five days, from Tuesday until Saturday. Following closing arguments on Saturday at 7:50 p. m., the jury informed the court of its fatigue. Deliberations were adjourned until Monday at 9 a. m. and the jury subsequently rendered its verdict. Fatigue had no bearing on the case since the jury had a day of rest before resuming deliberations. Plaintiff's counsel in closing argument did attempt to place the blame for the protracted trial on defense counsel. However, it was obvious to all present as to who was consuming the time and the trial court so found. If any prejudice would have resulted it would have gone in the plaintiff's direction.

Defendants claim that improper argument was made to the jury in numerous respects. Apparently the trial court agreed when it stated:

"It is the view of the court that the vituperation and impertinence displayed by plaintiff's counsel toward opposing counsel and their parties is deserving of the censure of the court. . . . the reference to Mr. Heft as Jack Armstrong in final argument is not approved."

However, the court found that his conduct did not prejudice the defendants.

Counsel for defendants did interpose several objections to plaintiff's counsel's closing argument but failed to move for a mistrial before the jury returned its verdict and, therefore, waived any complaint in this regard.[3]

This court can grant a new trial in the interest of justice even though no objections were made if it feels for any reason justice has probably miscarried. No miscarriage of justice has been shown in this case.

*Abuse of discretion of trial court in finding excessive damages award.*

The damages were found by the trial court to be excessive. But, the court further found that the excessiveness was not due to perversity or prejudice and was not the result of error occurring during the course of trial.

After considering the medical testimony offered by Dr. Krismer, the plaintiff's testimony in re pain, humiliation and worry and the limitation imposed upon his activities and the expectation of 44.2 years with this medical situation, the trial court determined that a reasonable award for pain and suffering was $30,000. Based on the testimony, the trial court also determined that a reasonable amount for loss of earning capacity for the fourteen-month period in question was $4,480.

The trial court applied the *Powers* [4] rule and the plaintiff elected to accept the reduced verdict. However, upon appeal, the plaintiff seeks a review of the trial court's action in reducing the jury's verdict. Upon a review of the record in this case, we are satisfied that the trial court did not abuse its discretion in reducing the amount

[3] *Sheldon v. Singer* (1973), 61 Wis. 2d 443, 213 N. W. 2d 5; *Hubbard v. Mathis* (1972), 53 Wis. 2d 306, 193 N. W. 2d 15; *Zweifel v. Milwaukee Automobile Mut. Ins. Co.* (1965), 28 Wis. 2d 249, 256, 137 N. W. 2d 6.

[4] *Powers v. Allstate Ins. Co.* (1960), 10 Wis. 2d 78, 102 N. W. 2d 393.

of the verdict. We find the reduced amounts reasonable under the facts of this case.

Counsel for defendants repeats the points of perverse negligence apportionment and the existence of newly discovered evidence as grounds for reversal and the granting of a new trial under sec. 251.09, Stats. We have already determined that the proportion of negligence was not perverse and that defendants did not meet all of the standard tests for the granting of a new trial based on newly discovered evidence.

We conclude that the trial court did not abuse its discretion and that there was no miscarriage of justice or prejudice influencing the jury verdict and the judgment appealed from is affirmed.

*By the Court.*—Judgment affirmed.